(No. 55745.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. HARRY KELLER *et al.*, Appellees.

*Opinion filed November 18, 1982.—Modified on denial of rehearing January 28, 1983.*

Tyrone C. Fahner, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Joel A. Stein, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellee.

JUSTICE CLARK delivered the opinion of the court:

The defendants, Harry Keller and Jonas McGhee, were charged by indictment on December 28, 1978, in the circuit court of Cook County with eight counts of theft, three counts of possession of stolen vehicles, and two counts of possession of motor vehicle component parts. (Ill. Rev. Stat. 1977, ch. 38, pars. 16—1(a)(1), 16—1(d)(1); Ill. Rev. Stat. 1977, ch. 95½, pars. 4—103(a), 4—103(d).) At the beginning of trial, on April 5, 1979, the defendants made motions to suppress. No argument was heard on those motions at that time; the court took them under advisement. Objections were made periodically by the defendants at trial to the introduction of evidence regarding the search of a garage, but were overruled. After the State presented its case, the State rested. The court then asked the defendants if they had any evidence to present on the motions to suppress. The defendants declined to present any witnesses, but did argue that the entry into the garage by a police officer on May 4, 1978, had been without probable cause and in the absence of exigent circumstances. At trial, on April 5, 1979, the court denied the defendants' motions to suppress without any argument from the State, based upon its determination that probable cause had existed and that exigent circumstances were present which justified the

warrantless search of the garage. Defendants' motions for directed findings were also denied at trial on April 5, 1979. The court found the defendants guilty and sentenced each of them to an extended term of 10 years.

On appeal by the defendants, the appellate court reversed the defendants' convictions, holding that the trial court had erred in failing to grant defendants' motions to suppress. (100 Ill. App. 3d 255.) The State filed a petition for leave to appeal (73 Ill. 2d R. 315(a)), which was granted.

On appeal before this court, the State asserts that the appellate court erred in holding that the motions to suppress were improperly denied. The State contends (1) that it did not waive its right to raise the issue of the defendants' lack of standing on appeal, and (2) that the defendants did lack standing to challenge the search of the garage.

On May 4, 1978, two Chicago police officers, John Walls and James Pubins, were traveling eastbound in an unmarked squad car on 58th Street near Ada Avenue in Chicago when they saw three men walking out of the door of a commercial garage building. Walls testified at trial that he had spoken with one whom he believed to be the owner or lessee of the garage approximately one month prior to May 4, 1978, and had been informed that he intended to vacate the garage in one week. Walls further testified that he therefore assumed that the garage had been vacated prior to May 4, 1978. On that date, as the officers drove up to the garage, they saw three men leave and stand on the sidewalk. When the officers were approximately 100 or 125 feet from the men, one of them, later identified as Robert Wilson, yelled "police," and the three men ran back into the garage. Defendants Keller and McGhee were identified at trial by Walls as the other two men.

The officers then pulled their squad car up to the

door and saw the three men run to the rear of the garage. Officer Pubins testified that he stood at the front door and observed the three men kicking at the back door. From where he stood, he testified, he could see a van, a truck and three cars and some motors lying on the ground. One of the cars, an Oldsmobile, had its door open, and Pubins could see that the seats were not in the car. Another car was missing its front bumper and front quarter panels. While Pubins continued to look through the building he observed the three men exit through the back.

During the time that the three men were running through the garage, Walls had run through a vacant lot adjacent to the garage. When Walls reached the rear of the building he observed two doors swing open and the three men attempt to run past him into the alley. Walls apprehended defendant Keller, but Wilson and defendant McGhee climbed over a fence and ran through a gangway towards the front of the garage. As the two men ran away from Walls, he saw Wilson drop a set of keys to the ground. One of the keys, it was later determined, fit the main front door of the garage. As McGhee and Wilson ran towards the front of the building, Walls called to Pubins that the two men were approaching. Pubins apprehended the two men, and Walls then brought Keller to the front of the garage.

Walls testified that defendant McGhee kept asking the officers why he and the others had been stopped when they had not done anything. Walls responded by asking them what they were doing in the garage. Defendant Keller said, "What garage?" and Walls told him the garage they had just exited. Defendant Keller stated that he was never in the garage.

Walls further testified that he left the gangway and went to the rear of the garage to inspect the premises for additional persons. He entered through the back door

and observed several late-model cars in various stages of dismantling. He also observed a motor on the floor that had its serial number torched off. Three of the vehicles that Walls observed, which were not totally dismantled, were later checked by their serial numbers and found to be stolen. Seven transmissions were also found with their identification numbers torched off. Cutting torches and tools were found throughout the garage. After Walls observed the identification numbers that had been torched off, he placed the defendants under arrest.

At trial, stipulations were entered into by the parties which established that the three cars which were found in the garage were stolen and were in the possession of the defendants and Wilson without the owners' consent. It was further stipulated that two car engines and transmissions which were found in the garage were from two cars that had recently been stolen and that the owners had not given the two defendants or Wilson consent to possess them.

As previously mentioned, after the State presented its evidence, it rested. The defendants did not present any witnesses but argued that their motions to suppress should be granted. The trial court denied the defendants' motions to suppress, and the defense rested. The court found the defendants guilty and imposed sentence.

On appeal, the appellate court held that the trial court had erred in failing to grant the defendants' motions to suppress because there was no probable cause and there were no exigent circumstances justifying the warrantless search of the premises. In view of its determination that the evidence of the stolen vehicles and vehicle parts should have been suppressed, the appellate court held that there was no evidence upon which to sustain the defendants' convictions. The appellate court further held that the State, by failing to raise the issue of the defendants' lack of standing in the trial court, had

waived its right to raise the issue on appeal. The court therefore reversed the convictions.

In the instant case, the trial court had held that the warrantless search of the garage was justified because exigent circumstances were present so as to establish probable cause. However, an issue preliminary to a determination of whether probable cause and exigent circumstances were present is whether the defendants possessed standing to raise the absence of a warrant.

The appellate court, in support of its holding that the State had waived its right to raise the issue of the defendants' lack of standing on appeal, relied upon this court's recent decision in *People v. Holloway* (1981), 86 Ill. 2d 78. *Holloway*, however, is readily distinguishable from the instant case. In *Holloway*, the defendant had prevailed on the motion to suppress, not the State. The State had made no objection on the basis of standing during its argument on the motion to suppress or in the motion to reconsider the court's ruling on the motion to suppress. Therefore, the court held that it would be unfair to require the defendant, the prevailing party, to rebut a new theory raised for the first time on appeal. (86 Ill. 2d 78, 91-92.) In *Holloway*, the court relied on *People v. McAdrian* (1972), 52 Ill. 2d 250, for the proposition that the State could not raise an issue for the first time on appeal. (86 Ill. 2d 78, 91.) But in *McAdrian*, as in *Holloway*, the State had not been the prevailing party and the court had reasoned that it would be unfair to allow the State to adopt a new theory on appeal. In the instant case, it would be unfair to hold that the State, as the prevailing party, had waived any reason it might conceivably have argued in support of the trial court's favorable ruling. The State should not have been precluded from raising the issue of standing on appeal under the circumstances in this case.

In the recent case of *Steagald v. United States*

(1981), 451 U.S. 204, 68 L. Ed. 2d 38, 101 S. Ct. 1642, the United States Supreme Court held that the government may lose its right on appeal to raise factual issues, such as standing, when (1) it has made contrary assertions in the courts below, (2) when it has acquiesced in contrary findings by those courts, or (3) when it has failed to raise such questions in a timely fashion during the litigation. The government in the *Steagald* case had asserted, in the court below, that a house which had been searched was directly connected with the petitioner. It had also acquiesced in statements by the court below characterizing the search as one of the petitioner's residence. Two years after petitioner's trial the government sought to return the case to the district court for a reexamination of the issue of standing. The court concluded that the government, through its assertions, concessions, and acquiescence, had lost its right to challenge petitioner's assertion that he possessed a legitimate expectation of privacy in the searched home. *Steagald v. United States* (1981), 451 U.S. 204, 211, 68 L. Ed. 2d 38, 45, 101 S. Ct. 1642, 1647.

In the instant case, the State had not made any contrary assertion regarding standing because, without arguing, it had prevailed on the motions to suppress on the grounds that probable cause and exigent circumstances existed justifying the warrantless search. There had been no acquiescence on the State's part because the defendants never asserted that they had a legitimate expectation of privacy in the garage. If the State in the instant case had argued against the defendants' motions to suppress, the issue of standing might have been addressed. Or if the defendants had asserted, as the petitioner did in *Steagald*, that they had a legitimate expectation of privacy, then the State might have challenged the assertion. Since neither situation occurred in the case at bar, a comparable holding as to waiver is not

warranted. The State did not waive the right to raise the issue of the defendants' lack of standing herein.

We turn next to the question of whether the defendants lacked standing to challenge the search of the garage in this case. In *Jones v. United States* (1960), 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725, the United States Supreme Court held that anyone who was legitimately on the premises where a search or seizure occurred should be able to challenge its legality by a motion to suppress, without having to allege or establish a proprietary or possessory interest in the premises searched or the things seized. The "automatic standing" rule of *Jones* was based upon the rationale that when the offense charged was the possession of the property seized, unless the accused had automatic standing, the accused would have to admit an element of the offense in order to have standing to challenge the search and seizure. Later, however, in *Alderman v. United States* (1969), 394 U.S. 165, 22 L. Ed. 2d 176, 89 S. Ct. 961, the court stated that a fourth amendment violation could only be successfully urged by those whose rights were actually violated by the search itself, not by those who were aggrieved solely by the introduction of damaging evidence. The *Alderman* court held that fourth amendment claims against unreasonable searches and seizures were personal claims which could not be vicariously asserted. 394 U.S. 165, 174, 22 L. Ed. 2d 176, 187, 89 S. Ct. 961, 966-67.

In *People v. McNeil* (1972), 53 Ill. 2d 187, this court reasoned that in Illinois our views in this evidentiary area should stand in accord with Federal decisions. Therefore, the court held that in light of *Alderman,* the Illinois courts should "adhere to the rule requiring a defendant to establish the manner in which his constitutional rights have been violated before permitting him to challenge the validity of a search and seizure." 53 Ill. 2d

187, 192.

The defendants in the instant case were in a garage that was not owned or leased by them; therefore they did not have a proprietary or possessory interest in it. There was also no evidence presented at trial to establish that these defendants were legitimately on the premises. So even under the automatic standing rule in *Jones,* since there was no showing here that these defendants were legitimately on the premises, they lacked standing to assert a violation of their fourth amendment rights in order to challenge the search of the garage. Also, even though there was testimony that the defendants were accompanied by a person, Robert Wilson, who possessed a key to the garage, these defendants cannot assert his fourth amendment rights or claim that they had any legitimate expectation of privacy in the garage. This is true particularly in light of the fact that these defendants denied to the police ever having been in the garage. It is clear that these defendants lacked standing to assert a violation of their fourth amendment rights.

Accordingly, for all the reasons stated, the judgment of the appellate court is reversed. However, the cause is remanded to the appellate court for resolution of the remaining issues which were raised by the defendants in the appellate court, but which the appellate court found unnecessary to address since it held that a fourth amendment violation had occurred.

*Reversed and remanded.*