THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PRINCE HARRIS GIBSON, Defendant-Appellant.

Second District   No. 81—902

Opinion filed May 3, 1983.

G. Joseph Weller and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan, and Frank Weiss, of Chicago (Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Prince Harris Gibson, a/k/a Owen Gibson, and co-defendant, Victor Johnson, were charged in Lake County with the offenses of burglary, theft of property over $150, and possession of burglary tools. (Ill. Rev. Stat. 1979, ch. 38, pars. 19—1(a), 16—1(a)(1), and Ill. Rev. Stat. 1981, ch. 38, par. 19—2.) Gibson was also charged with obstructing justice. Ill. Rev. Stat. 1981, ch. 38, par. 31—4(a).

What occurred was that a Lake Forest police officer on routine patrol on April 3, 1981, at about 10:20 a.m., observed a Cadillac bearing a Chicago vehicle sticker exiting the driveway of a Lake Forest residence. The driver was Victor Johnson. The residence was the home of Dr. and Mrs. Engelhardt and it was one of the residences shown on the officer's "vacant" list; that is, the police department had been alerted that the residents were away on vacation.

The officer radioed the Cadillac license plate number in for a check; the car was registered to "a Johnson in Chicago." The officer turned his vehicle around and began following the car. When the car exceeded the speed limit (50 m.p.h. in a 30 m.p.h. zone), the officer stopped the car. The officer was unaware until that time that defendant Gibson was a passenger in the car. When the officer went to the passenger side of the car to see Gibson's driver's license, he observed two pair of cowhide gloves and a screwdriver on the floor of the car. The officer radioed to have someone check the residence the codefendants had been seen leaving, and was advised the sliding glass door was ajar and off the runner, and the upstairs bedroom appeared to have been ransacked. The two men were then arrested, and the car towed to the police station.

Later that evening, the Engelhardts' daughter was summoned to

the home and she telephoned her parents, then in Seattle. As a result of the conversation, several specific items were discerned to be missing: some silver earrings, a cuff link box, six $100 bills, and a pillow case. When the defendants were searched at the police department, Johnson had five $100 bills, $92 in assorted bills, and various items of jewelry; Gibson had one $100 bill, $41 in assorted currency, some jewelry, and a key to the trunk of the Cadillac which fell out of his shoes when he was asked to bang them together at the police department.

The warrant authorizing the search of the Cadillac sought seizure of "items contained in the vehicle which were taken as a result of a burglary on April 3, 1981" from the residence in question. The complaint supporting the warrant set forth only that the residents' daughter stated "her parents kept a number of $100 bills on hand in their bedroom which bills were missing." When the search of the car was executed, the police found a pillow case containing credit cards, various items of jewelry, two small gold coins, and postal bonds issued in the name of "Engelhardt." The items were later identified by the Engelhardts as their property.

The possession-of-burglary-tools charge was dismissed at the preliminary hearing. The trial court denied the defendants' motions to quash the search warrant which had been issued for Johnson's car and to suppress the proceeds of the burglary found therein. That motion was grounded, *inter alia,* on the lack of specificity as to the particular items to be seized and lack of probable cause. The trial court also denied defendants' motion to suppress the physical evidence on the basis that the arrest was illegal.

Defendant's motion for a directed verdict on the obstructing charge was granted at the close of evidence in his bench trial. Defense counsel's renewed motions to quash and suppress were denied, and the trial court found Gibson guilty of burglary and not guilty of theft due to failure of proof of value over $150. Defendant's post-trial motion was denied, and the court sentenced him to the Department of Corrections for six years. Gibson's codefendant, Victor Johnson, previously had pled guilty to the charge and had received a six-year sentence as well. He has not appealed.

Gibson appeals, raising four issues: (1) whether the State has waived the issue of standing on appeal; (2) whether the search warrant was valid and whether the court erred in not suppressing the physical evidence obtained by reason of the search; (3) whether he was proven guilty of burglary beyond a reasonable doubt, and (4) whether he is entitled to a new sentencing hearing.

■ In its answer brief, the State maintains for the first time that

defendant Gibson lacked standing to challenge the admission of evidence procured pursuant to what the defendants alleged prior to trial was an invalid warrant. It argues that defendant has failed to meet the burden imposed in *Rakas v. Illinois* (1978), 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421, that the proponent of a motion to suppress bears the burden of proving not only that the search was illegal, but also that he had a "legitimate expectation of privacy" in the area searched.

At the suppression hearing, Gibson testified he did not know to whom the car belonged, but that when Johnson became tired of driving the car the day before they were arrested, Gibson changed seats with him and drove the car. Gibson testified he did not have a set of keys to the car, nor did Johnson ever give him a set.

The State argues the fact Gibson had a key in his shoe which fit the trunk of the car, thus evidencing Gibson was "in possession" of the proceeds of the burglary, does not exclude the argument that Gibson lacked standing. In support, it cites *United States v. Salvucci* (1980), 448 U.S. 83, 65 L. Ed. 2d 619, 100 S. Ct. 2547, wherein the court stated that "a prosecutor may, with legal consistency and legitimacy, assert that a defendant charged with possession of a seized item did not have a privacy interest violated in the course of the search and seizure." 448 U.S. 83, 88-89, 65 L. Ed. 2d 619, 626, 100 S. Ct. 2547, 2551.

The defendant finds the instant case distinguishable from *Salvucci* because the State's assertions are "wholly inconsistent" with each other. Defendant posits the State may not argue on the one hand that he had a possessory interest in the car for the purpose of supporting his burglary conviction and, on the other, argue he did not have a possessory interest for purposes of standing. Defendant also argues the State waived this standing issue by failing to raise it earlier, and the fact that a full evidentiary hearing was held in the case at bar distinguishes it from *People v. Keller* (1982), 93 Ill. 2d 432.

We find the defendant's attempt to distinguish *Salvucci* and *Keller* unpersuasive. *Salvucci* explicitly overruled the "automatic standing" rule of *Jones v. United States* (1960), 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725. The *Salvucci* court noted one of the reasons the *Jones* court adopted the automatic standing rule was to prevent the " 'vice of prosecutorial self-contradiction' "; *i.e.*, where the government is allowed to assert that the defendant possessed the goods for purposes of criminal liability, while simultaneously asserting that the defendant did not possess them for the purposes of claiming the protections of the fourth amendment. (*United States v. Salvucci* (1980),

448 U.S. 83, 88, 65 L. Ed. 2d 619, 626, 100 S. Ct. 2547, 2551.) *Salvucci* explicitly declined "to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched." 448 U.S. 83, 92, 65 L. Ed. 2d 619, 628, 100 S. Ct. 2547, 2553.

*Salvucci* emphatically rejected the assumption that possession of a seized good imports any measure of entitlement to the protection of the fourth amendment.

> "[W]e must instead engage in a 'conscientious effort to apply the Fourth Amendment' by asking not merely whether the defendant had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched." (448 U.S. 83, 93, 65 L. Ed. 2d 619, 629, 100 S. Ct. 2547, 2553.)

The record here not only fails to reveal that Gibson had a "legitimate expectation of privacy" in the car, but that he did not even know to whom the car belonged.

Defendant suggests in a footnote in his brief that the State waived the issue of standing because the instant case is distinguishable from *People v. Keller* (1982), 93 Ill. 2d 432. In *Keller*, the court held the State had not waived the issue of standing by raising it for the first time on appeal. The court there found it would be unfair to hold that the State, which had prevailed below when the trial court denied the defendant's motion to suppress, had waived any reason it "might conceivably have argued" in support of the trial court's favorable ruling. (93 Ill. 2d 432, 437.) As noted by the defendant here, a distinguishing feature is that an evidentiary hearing on the motion to suppress was held and the State did present argument in opposition to the motion. In *Keller*, there was neither an evidentiary hearing, nor did the State argue the motion. The court there took the motion under advisement at the beginning of the trial, and ruled on it during the next day of trial without argument from the State.

The court in *Keller* analyzed the issue before it according to the criteria enunciated in *Steagald v. United States* (1981), 451 U.S. 204, 68 L. Ed. 2d 38, 101 S. Ct. 1642. The instant question may be analyzed per *Steagald* as well.

In *Steagald*, the court noted that aside from arguing that a search warrant was not constitutionally required (which was also the argument made by the State here), the prosecuting agency risks losing its right to defend on the basis of other types of factual issues (*e.g.*, lack of reasonable expectation of privacy, consent or exigent circumstances) under certain conditions. Specifically, the right to raise those

types of factual issues may be lost where the prosecuting agency has made contrary assertions in a court or courts below, when it has acquiesced in contrary findings in those courts, or when it failed to raise such questions in a timely fashion during the litigation. *Steagald v. United States* (1981), 451 U.S. 204, 209, 68 L. Ed. 2d 38, 43-44, 101 S. Ct. 1642, 1646.

We believe the record here does not support the conclusion that the State waived its right to raise the issue of standing in this court.

The suppression hearing was held to consider jointly two separate motions filed by counsel representing both Victor Johnson and Prince Gibson. The first motion was entitled "Motion to Quash Search Warrant and to Suppress Evidence Illegally Seized." More particularly, the movants (Gibson and Johnson) moved the court to quash the warrant for search of the vehicle "of VICTOR JOHNSON" and "to suppress any evidence against *him*." (Capitalization in original; emphasis added.)

In the second motion, entitled "Motion to Suppress Evidence Based on Illegal Arrest," movants (Gibson and Johnson) moved the court to suppress evidence based upon the illegal arrest "of VICTOR JOHNSON." (Capitalization in original.)

It would appear that the motions to quash and suppress below were advanced on behalf of the defendant's codefendant, Victor Johnson. Any arguments advanced by the State at that hearing were directed toward opposing the motions insofar as Johnson's fourth amendment rights were concerned. The State was not presented with what fourth amendment rights of Gibson may or may not have been violated.

The conditions under which *Steagald* determined waiver occurred cannot fairly be imputed to the State on the basis of its argument made at that suppression hearing.

■ Additionally, after all the evidence was presented at Gibson's trial, defense counsel renewed the motions to quash the warrant for lack of specificity and to suppress physical evidence based on illegal arrest, which the court again denied. Although the prosecutor was given the opportunity to argue, she did not do so, but merely asked the court to deny the motions. We note here that the general rule is that it is not error for a trial judge, without a hearing, to deny a motion to suppress which has previously been ruled upon, in the absence of an indication of exceptional circumstances or some evidence in addition to that which was presented at the earlier hearing. (*People v. Burrows* (1980), 84 Ill. App. 3d 533, 535.) The record fails to reveal any exceptional circumstances or additional evidence presented at

trial which was not presented earlier.

Although the passenger of a car detained illegally for lack of probable cause has standing to contest the validity of the arrest (*People v. Bradi* (1982), 107 Ill. App. 3d 594; *People v. Kunath* (1981), 99 Ill. App. 3d 201), in the absence of a showing that he had a reasonable expectation of privacy in the area *searched*, defendant here lacked standing to claim the protection of the fourth amendment. (*People v. Flowers* (1982), 111 Ill. App. 3d 348.) The arguments made by the prosecutor concerning defendant's "control of" or "possessory interest" in the car by virtue of the trunk key found in his shoe were in the first instance relevant for purposes of establishing criminal liability, which arguments are not synonymous with establishing that the defendant had an expectation of privacy. Therefore, the prosecutor may not be held to have made "contrary assertions" or "acquiescences" in the trial court which would have constituted waiver of the standing issue, particularly in light of the fact the defendant never once asserted he had a legitimate expectation of privacy in the area searched. (*People v. Keller* (1982), 93 Ill. 2d 432, 437-38.) Clearly, Gibson had no standing to challenge the search.

In light of our resolution of the first issue presented, we need not address the issue as to the validity of the warrant.

■■ The defendant next argues his guilt of burglary was not proved beyond a reasonable doubt since his conviction was based on his "mere presence" at the scene, and that there was no evidence that he was aware of and/or participated in the burglary. Further, defendant asserts the key found in his shoe should be given little weight in determining the sufficiency of the evidence, because the key was not admitted in evidence, nor even a photo of it, it was not mentioned in the officer's report, and the arresting officer could not testify to the present location of the key.

It has been held that, standing alone, a defendant's exclusive and unexplained possession of recently stolen property is not sufficient to sustain a conviction for burglary. (*People v. Housby* (1981), 84 Ill. 2d 415, 423.) However, the legal presumption which arises when a defendant is found to be in the exclusive and unexplained possession of recently stolen property does not offend the due process concept of proof beyond a reasonable doubt:

"[I]f: (i) there was a rational connection between his recent possession of property stolen in the burglary and his participation in the burglary; (ii) his guilt of burglary is more likely than not to flow from his recent, unexplained and exclusive possession of burglary proceeds; and (iii) there was evidence corroborating

[the defendant's] guilt." 84 Ill. 2d 415, 424.

The record at bar supports the defendant's conviction for burglary. When the car was first observed exiting the driveway by the arresting officer, he did not notice Gibson in the passenger seat. Gibson was perhaps ducking down, hiding, or possibly the officer simply failed to see him. Whatever the reason, the officer continuously observed the car for a distance of about one mile after it exited the driveway. No one was picked up or dropped off during the interim, yet when the officer stopped the car for speeding, the defendant was observed therein. *Two*, not one, pair of gloves and a screwdriver were found in the front of the car. If the gloves were for warmth (it was early April), they were not being worn; the screwdriver arguably facilitated removal of the sliding glass door from its hinges. When searched at the police station, defendant had one folded $100 bill in his pocket. Victor Johnson had five $100 bills. Six $100 bills were testified to have been taken from the residence. The defendant had only $41 in other currency on his person when arrested; that amount was returned to him after sentencing.

Lastly, of course, the defendant had in his shoe a key which fit the trunk of the car. The weight given to that evidence and the credibility of the witness were matters peculiarly within the discretion of the court, and its judgment will not be set aside on review unless it is based on insufficient or unsatisfactory evidence. (*People v. Crenshaw* (1959), 15 Ill. 2d 458; *People v. West* (1958), 15 Ill. 2d 171.) Additionally, it is well established that joint possession with another can be considered "exclusive" possession within the operation of the legal presumption. (*People v. Wheeler* (1955), 5 Ill. 2d 474, 485.) Finally, we note the defendant's possession of the stolen goods was unexplained. We conclude the defendant's guilt of burglary was proved beyond a reasonable doubt.

■ Lastly, the defendant contends he is entitled to a new sentencing hearing on the basis the court improperly considered the opinion of the author of the presentence report in denying the defendant probation where that person was not available for cross-examination in court.

The State argues that the defendant has waived this issue for failing to raise it in his post-trial motion. (*People v. Jackson* (1981), 84 Ill. 2d 350.) We find such contention to be without merit, since the defendant's post-trial motion was filed and argued before the sentencing hearing was ever held. Further, the defendant objected during the hearing to the court's consideration of the probation officer's opinion that the defendant would be "an extreme risk to probation and soci-

ety" due to his past criminal history. The court indicated it would not disregard the probation officer's opinion, but would "give it whatever weight a half-hour interview would be."

■ Consideration by a sentencing judge of a probation officer's assessment of the defendant's potential for successful completion of a term of probation is not improper. (*People v. Young* (1977), 52 Ill. App. 3d 671, 675.) The presentence report shows the defendant's prior criminal history consisted of convictions of, fines and/or sentences to, State and Federal institutions for 14 offenses during the period 1964 to 1974 in Illinois and Utah, and that he had been arrested twice for disorderly conduct, once for battery and once for simple assault just since his arrest for the instant offense.

We cannot say that the trial court abused its discretion in any manner in sentencing the defendant to the Department of Corrections rather than imposing a term of probation.

The judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

LINDBERG and NASH, JJ., concur.