THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT BOLDEN, Defendant-Appellant.

First District (2nd Division) No. 85—1014

Opinion filed February 3, 1987.—Rehearing denied March 3, 1987.

James J. Doherty, Public Defender, of Chicago (Linda J. Seeley, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

Defendant appeals from his conviction and sentence for armed robbery.

Robert Bolden and codefendant, Anthony Konn, were charged by

information with armed robbery, aggravated battery, and armed violence. Konn's case was severed from Bolden's, and Bolden was tried before a jury and found guilty of all the offenses with which he was charged. The trial judge sentenced defendant Bolden to six years in prison for armed robbery.

The charges against defendant arose from the armed robbery of Thaddus Roby on October 25, 1984. On the evening of October 24, 1984, Mr. Roby attended a wake and then went to a restaurant where he had two drinks. He returned home to his apartment building at about 2:30 a.m. on October 25. As Roby approached the elevator in his building, he encountered defendant and a companion. Roby testified that he was familiar with both men having seen them around the building for several months. On a previous occasion Roby had offered to help defendant find a job, and when Roby saw defendant at the elevator on the morning of October 25, the two men discussed employment possibilities. Defendant, Roby, and defendant's companion got on the elevator and rode to the 17th floor, where Roby lived.

According to Roby, all three men emerged from the elevator on the 17th floor and walked toward Roby's apartment. In a stairwell on the 17th floor, defendant's companion put a knife to Roby's throat and demanded Roby's money. When Roby protested, defendant struck him in the mouth. Roby tried to grab the knife from defendant's companion, and a struggle ensued. As a result of this fight, Roby suffered a knife wound and other injuries. Finally, defendant's companion regained control of Roby. As the companion held Roby at bay with a knife, defendant took Roby's wallet, keys, and money. Defendant and his companion then escaped down the stairwell.

Chicago police officer Edward Koop arrived at the scene of the robbery at about 2:30 a.m. Officer Koop interviewed the victim, but did not take notes during the interview. After Mr. Roby had been taken to the hospital, Officer Koop prepared a written report on the robbery.

At Weiss Memorial Hospital, Roby was treated by Dr. Allen Joseph. Dr. Joseph testified at defendant's trial that Roby had suffered wounds on the hands and face. The doctor detected an odor of alcohol on Roby's breath, but Roby was able to express himself coherently enough for the doctor to understand him. The doctor acknowledged that the odor of alcohol could have been produced by one or two drinks. Roby told the doctor that he had been the victim of a robbery in his apartment building.

Later in the day, on October 25, Chicago police officer John Hickey went to the scene of the robbery to investigate. After talking to Mr. Roby and a security guard for the apartment building, Officer Hickey

and some other police officers arrested defendant's companion, Anthony Konn, in apartment 1714. Next, the officers spoke to Sheldra Anderson, defendant's girlfriend and a resident of the building. Anderson explained that defendant customarily stayed in her apartment except for times when the couple argued. Defendant and Anderson had quarreled two days prior to the robbery, at which time Anderson asked defendant to leave. The police officers accompanied Anderson to her apartment, where they found Roby's wallet on top of a dresser.

Chicago police officer Wayne Johnson arrested defendant at about 7:25 p.m. on October 25, 1984. Officer Johnson found defendant in the vicinity of the apartment building where the robbery occurred. At first, defendant claimed that his name was Jesse Williams but later admitted that he was Robert Bolden. Defendant informed police officers that his residence was Apartment 1907, 4848 North Winthrop, Chicago. This is the apartment occupied by defendant's girlfriend, Sheldra Anderson.

Prior to his trial, defendant moved to suppress evidence of the wallet found in Anderson's apartment. The State contended that since the wallet was found in Anderson's home, defendant's privacy had not been invaded and he lacked standing to challenge the legality of the search. Defendant claimed that he resided with Anderson and that he had standing to challenge the search of her apartment. The court declared that defendant lacked standing to contest the search and denied defendant's motion to suppress.

After defendant was found guilty on all charges, the court sentenced him to prison, and he now appeals from his conviction.

The first issue raised by defendant is whether the court erred in denying his motion to suppress evidence of the robbery victim's wallet found during a search of Anderson's apartment. Defendant claims that he had standing to challenge the search of his girlfriend's apartment. According to defendant, he lived in the apartment with his girlfriend and thus enjoyed a reasonable expectation of privacy in the premises. Moreover, defendant claims that his fourth amendment rights were violated because the police searched the apartment without a warrant. The State contends that defendant lacked standing to contest the search because he was only a guest in the apartment and had been asked to leave two days before the robbery.

■ Defendant had standing to challenge a search of the apartment where he stayed with his girlfriend. In order to have standing to contest the legality of a search, defendant must show that his own fourth amendment rights have been violated. It is not sufficient to confer standing upon a defendant where a third person's privacy has been invaded and the evidence uncovered by such a search will enhance the

prosecution's case. (*People v. Keller* (1982), 93 Ill. 2d 432, 439, 444 N.E.2d 118.) However, a defendant's standing does not arise from the arcane principles of property law; rather the concept of standing has its genesis in the privacy interests protected by the fourth amendment. Capacity to claim fourth amendment protection depends, not upon a property right, but upon whether the aggrieved person has a legitimate expectation of privacy in the invaded place. (*Rakas v. Illinois* (1978), 439 U.S. 128, 143, 58 L. Ed. 2d 387, 401, 99 S. Ct. 421, 430.) Whether one has a legitimate expectation of privacy in a place is measured by an objective standard drawn from common experience. As the court noted in *People v. Koris*, " 'Legitimation of expectations of privacy *** have a source outside of the Fourth Amendment, either by reference to *** property law or to understandings that are recognized or permitted by society.' " (*People v. Koris* (1982), 107 Ill. App. 3d 821, 826, 438 N.E.2d 539, quoting *Rakas v. Illinois* (1978), 439 U.S. 128, 143-44 n.12, 58 L. Ed. 2d 387, 401-02 n.12, 99 S. Ct. 421, 430-31 n.12.

■ Defendant in this case enjoyed a legitimate expectation of privacy in his girlfriend's apartment. It is true, as the State observes, that defendant did not have a property right in the apartment. Anderson rented the apartment from the Chicago Housing Authority, and only her name appeared on the lease. However, to the extent that defendant resided anywhere, it was in the apartment with his girlfriend. When he talked to the police, defendant gave the address of the apartment as his place of residence. Defendant kept his clothes and other belongings at Anderson's apartment, and he lived there with her on a continuous basis, interrupted only by temporary absences when the couple quarreled. Finally, a security officer for the apartment building testified that he had seen defendant daily and that defendant unlocked the door to Anderson's apartment with a key. In view of the fact that defendant apparently made his home with Anderson, he should have been allowed to challenge the search of her apartment.

■ Although defendant had standing to contest the legality of the search in this case, he fails to demonstrate that his fourth amendment rights were violated. The robbery victim's wallet was admissible as evidence because the police searched Anderson's apartment with her permission. A police officer may conduct a warrantless search if a person with authority over the property consents to a government invasion of his privacy. Consent must be voluntary, but it need not be given by defendant. Rather, any person who has access to or control of the property for most purposes has authority to consent to a search, and the evidence seized during the search may be used against defendant. *United States v. Matlock* (1974), 415 U.S. 164, 171, 39 L. Ed. 2d 242,

249-50, 94 S. Ct. 988, 993; *People v. Bean* (1981), 84 Ill. 2d 64, 69-70, 417 N.E.2d 608.

It is apparent from the record that Anderson had authority to consent to a search of her apartment. Moreover, nothing in the record indicates that Anderson's permission was involuntarily given. Defendant did not claim in his motion to suppress that Anderson was coerced into consenting to a search. He only contended that he had a privacy interest in the apartment and that the premises had been searched without a warrant. Officer Hickey, who searched the apartment, testified that Anderson was "very cooperative and mannerly and she said that—she would be happy—she had no problem if I wanted to look."

Defendant contends, however, that the State is precluded from asserting that Anderson consented to a search of her apartment. According to defendant, the State has waived its right to present this theory on appeal because the prosecutor did not argue in the trial court that the police officers had permission to search Anderson's apartment.

Defendant makes a cogent argument, but on balance, the State should prevail on this point. It is true that issues not raised in the trial court are waived on appeal. This principle applies not only to defendant, but to the State as well. The policy behind the waiver rule is that one party's failure to urge a theory in the trial court prevents the other party from presenting rebuttal evidence which could have had some bearing on the question. *People v. Holloway* (1981), 86 Ill. 2d 78, 91-92, 426 N.E.2d 871.

Some aspects of the present case indicate that the State has waived its right to claim that this was a consent search. The State objected to the defendant's motion to suppress on the ground that defendant lacked standing to challenge the legality of the search. The trial court determined that defendant had no standing and at a suppression hearing denied defendant an opportunity to make an offer of proof with regard to the legality of the search.

■ Despite the foregoing considerations, several circumstances indicate that the waiver rule is inapplicable to the present situation. Generally, the waiver rule is applied to the State only when the prosecution is appealing the trial court's decision to grant a defendant's motion to suppress. (See, *e.g., People v. Holloway* (1981), 86 Ill. 2d 78, 91-92, 426 N.E.2d 871; but see, *People v. Chianakas* (1983), 114 Ill. App. 3d 496, 501-02, 448 N.E.2d 620.) In such cases, the State is estopped from arguing a new theory on appeal because it acquiesced in an inconsistent theory below. *(People v. McAdrian* (1972), 52 Ill. 2d 250, 254, 287 N.E.2d 688.) On the other hand, it would be unfair to hold that the State, as the prevailing party in a motion to suppress, has waived any

reason it might have argued in support of the court's ruling. (*People v. Keller* (1982), 93 Ill. 2d 432, 437, 444 N.E.2d 118.) Here, the State prevailed in the court below and did not set forth a theory inconsistent with its argument on appeal. Consequently, the State should be allowed to argue any theory to support the court's judgment in its favor.

■ Furthermore, it is the court's judgment and not its reasoning that is at issue on appeal. In view of this principle, a judgment may be sustained on any ground discernible from the record, regardless of whether it was relied upon by the trial court. (*People v. Holloway* (1985), 131 Ill. App. 3d 290, 306, 475 N.E.2d 915.) The record in this case supports a finding that the police conducted a valid consent search, and the judgment below may be sustained on this ground.

■ The second issue presented on appeal is whether the court erred in forbidding defendant to impeach his own witness with a prior inconsistent statement. At trial, defendant called as a witness Officer Koop, a policeman who had interviewed the victim shortly after the robbery. Officer Koop testified that the victim said that he had been robbed on the 17th floor of his apartment building. According to the police report prepared by Officer Koop, however, the victim said that he had been robbed in the elevator. Defendant sought to impeach Officer Koop's testimony by reading the prior inconsistent statement from the police report. Defendant was not permitted to impeach his own witness. The court did allow defendant to ask Officer Koop whether his police report recited that the robbery occurred in the elevator. In response to this question, the officer said that his report stated that the robbery occurred on the 17th floor.

Defendant should have been allowed to impeach Officer Koop's testimony with a prior inconsistent statement. The old voucher rule, whereby the party who calls a witness may not impeach him, was completely abolished in Illinois by Supreme Court Rule 238(a). This rule, adopted in April 1982, provides that "[t]he credibility of a witness may be attacked by any party, including the party calling him." 87 Ill. 2d R. 238(a), applicable to criminal cases through Rule 433.

The new rule significantly liberalizes a party's ability to impeach his own witness. Prior to the amendment of Rule 238, a party had to demonstrate that he was surprised by the witness' testimony and the rule applied only to occurrence witnesses. (73 Ill. 2d R. 238; see also E. Cleary & M. Graham, Illinois Evidence sec. 607.4, at 326-28 (1984).) Now, so long as the testimony is damaging, a party can impeach his own witness without having to demonstrate surprise. (*People v. Gonzalez* (1983), 120 Ill. App. 3d 1029, 1039, 458 N.E.2d 1047; see also *People v. Amato* (1984), 128 Ill. App. 3d 985, 986-87, 471 N.E.2d 928.)

Moreover, the new rule eliminates any reference to occurrence witnesses.

Officer Koop's testimony was damaging to defendant's case since the officer corroborated the testimony of the robbery victim. Consequently, defendant should have been allowed to introduce Officer Koop's prior inconsistent statement. Furthermore, even if surprise were still a prerequisite to the impeachment of one's own witness, defendant should have been permitted to impeach Officer Koop because defendant believed that Koop would testify consistently with his police report.

■ Despite the fact that defendant should have been allowed to impeach his own witness, this error does not demand reversal. It is true that in some cases, lack of opportunity for impeachment may constitute prejudicial error. (See *People v. Gonzalez* (1983), 120 Ill. App. 3d 1029, 1038-39, 458 N.E.2d 1047.) However, in this case the error appears to be harmless. Where there is sufficient competent evidence establishing the defendant's guilt beyond a reasonable doubt, and it does not appear that the error complained of was the basis for the jury's verdict, then an error is harmless, and reversal is not required. *People v. Chianakas* (1983), 114 Ill. App. 3d 496, 505, 448 N.E.2d 620.

There was ample evidence in the present case to prove defendant guilty beyond a reasonable doubt. The robbery victim was well-acquainted with defendant and identified him as one of the assailants. The victim's wallet was found in an apartment used by defendant. Moreover, the doctor who treated the victim confirmed that Mr. Roby suffered wounds consistent with his account of the robbery. It is true that the victim appeared to be somewhat confused about where the robbery occurred, but such confusion may have been attributable to the victim's poor physical and emotional condition immediately following the robbery, or Officer Koop may have made an error in writing his report. Even if defendant had been permitted to point out that Officer Koop's police report placed the scene of the robbery in an elevator, this impeachment would have done little to dispel the substantial evidence of defendant's guilt.

■ The third issue presented on appeal is whether the prosecutor acted improperly when he observed during his closing argument that the State's evidence was uncontroverted. Defendant contends that when the prosecutor commented upon the uncontroverted nature of the State's evidence, he improperly drew attention to the fact that defendant failed to testify.

The State contends that defendant has waived the right to raise this objection on review because he failed to object to some of the pros-

ecutor's comments at trial. It is true that a defendant may waive even constitutional objections by failing to raise them in the trial court. (*People v. Collins* (1985), 106 Ill. 2d 237, 263, 478 N.E.2d 267.) The purpose behind this rule is that errors should be brought to the attention of the trial judge, who is in a position to handle them effectively. *People v. Thomas* (1983), 116 Ill. App. 3d 216, 220-21, 452 N.E.2d 77.

During closing argument, the State mentioned six times that the evidence of the defendant's guilt was uncontroverted. Defendant objected on two of these occasions but was overruled, and he also objected to the State's remarks in a post-trial motion. Although defendant did not object each time the prosecutor mentioned uncontroverted evidence, defendant's two objections, along with his post-trial motion, alerted the trial judge to the alleged errors, and the purpose of the waiver rule was thus satisfied. In view of this fact, defendant should not be precluded from raising his objection on appeal.

■ The prosecutor's statements, made during closing arguments, were improper and violated defendant's right to remain silent. *Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229; *People v. Wollenberg* (1967), 37 Ill. 2d 480, 229 N.E.2d 490. Generally, when a prosecutor notes during closing argument that the State's evidence is uncontroverted, he does not improperly direct the jury's attention to the defendant's failure to testify. Rather this remark serves only to emphasize the strength of the State's case. (*People v. Bryant* (1983), 94 Ill. 2d 514, 524, 447 N.E.2d 301.) Only when it is apparent that the prosecutor's references were intended or calculated to focus attention on the defendant's failure to testify can it be said that defendant's constitutional rights have been violated. *People v. Miller* (1983), 120 Ill. App. 3d 495, 503, 457 N.E.2d 1373.

The prosecutor's statements were calculated to focus attention on defendant's silence. In *People v. Escobar* (1979), 77 Ill. App. 3d 169, 395 N.E.2d 1028, the court held that a prosecutor who described the State's case as "uncontradicted and undenied" six times had impermissibly drawn attention to the defendant's failure to testify. The court concluded that the statements were not brought in order to strengthen the State's case but rather to point out defendant's failure to testify. The court observed that defendant was the only person who could have contradicted the State's witnesses and that the use of the word "undenied" could only refer to defendant and not to any other witness for defendant. The court reasoned that while any witness may contradict evidence admitted in court, only a defendant may deny an accusation. Lastly, the court pointed out that the prosecutor's comments were not "an accurate summary of the evidence" because defendant did chal-

lenge the State's case by bringing forth his own witnesses.

The prosecutor's references to the uncontradicted nature of the State's case were calculated to focus attention on defendant's failure to testify. During closing argument, the prosecutor, over defendant's objections, stated six times that the State's evidence was uncontradicted. In each instance the prosecutor was referring to specific testimony by a State's witness or other evidence which he had just summarized for the jury. Moreover, the prosecutor used the word "undenied" in one of his comments to the jury. The obvious intention of the prosecutor was to bring to the attention of the jury that defendant failed to deny these accusations. This is made especially clear by the fact that defendant was the only one who could deny these accusations. Lastly, the State's case was not uncontradicted or unchallenged as defendant brought forth his own witnesses to testify.

 Although the prosecutor's improper comments were unconstitutional, the error was harmless. As the Supreme Court stated in *United States v. Hasting* (1983), 461 U.S. 499, 508, 76 L. Ed. 2d 96, 105-06, 103 S. Ct. 1974, 1980, there may be some constitutional errors which, in the setting of a particular case, are so unimportant and insignificant that they may be deemed harmless, and not reversible error. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) Moreover, it is well settled that such improper comments do not constitute reversible error when they are not prejudicial to defendant. (*People v. Williams* (1975), 26 Ill. App. 3d 381, 385, 324 N.E.2d 707; *People v. Edwards* (1979), 77 Ill. App. 3d 237, 244, 395 N.E.2d 1095; see *People v. Houston* (1974), 21 Ill. App. 3d 209, 215, 315 N.E.2d 192, *cert. denied* (1975), 420 U.S. 936, 43 L. Ed. 2d 412, 95 S. Ct. 1145.) Such comments are not prejudicial if they did not represent a material factor in defendant's conviction or if the verdict would not have been different had the comments not been said. (*People v. Acker* (1970), 127 Ill. App. 2d 283, 295-96, 262 N.E.2d 247; *People v. Holman* (1974), 19 Ill. App. 3d 544, 546, 311 N.E.2d 696.) Viewing the trial record as a whole, this court finds that the State's statements as to the uncontradicted nature of its evidence were not prejudicial. We find that the evidence established the guilt of defendant beyond a reasonable doubt even absent the admission of the prosecutor's remarks.

 The fourth issue presented by this case is whether defendant was denied his right to an impartial trial because the State used its peremptory challenges to exclude all seven black veniremen from the jury. Illinois law has been clear on this controversial issue. Repeatedly, our supreme court has held that a defendant's right to an impartial jury trial is impaired only when blacks are systematically excluded

from the jury in case after case. (*People v. Mack* (1984), 105 Ill. 2d 103, 473 N.E.2d 880; *People v. Payne* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202; *People v. Yates* (1983), 98 Ill. 2d 502, 456 N.E.2d 1369; *People v. Davis* (1983), 95 Ill. 2d 1, 447 N.E.2d 353.) Defendant has presented no evidence that any such practice occurred here.

While defendant's appeal was pending, however, the United States Supreme Court in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, declared that a defendant need not show that the State has engaged in systematic racial discrimination in jury selection in case after case. Rather, according to *Batson*, the equal protection clause forbids the prosecution from challenging potential jurors solely on account of their race, and a defendant can make a *prima facie* showing of purposeful racial discrimination by citing facts concerning jury selection at his own trial. Once defendant has demonstrated circumstances from which one could infer that the prosecutor used peremptory challenges to exclude persons from the jury because of their race, then the burden shifts to the State to present a neutral explanation for its conduct.

The court declined to rule on the retroactive application of its decision. Recently, in *Griffith v. Kentucky* (1987), 479 U.S. ___, 93 L. Ed. 2d 649, 107 S. Ct. 708, the United States Supreme Court held that the *Batson* ruling would be applicable retroactively to litigation pending on both direct State and Federal review and not yet final when *Batson* was decided.

Accordingly, we remand this case to the circuit court for a hearing on the present record and any additional record to determine whether, pursuant to *Batson*, the prosecutor purposefully discriminated against blacks in executing peremptory challenges. If the circuit court finds that the prosecutor did not purposefully discriminate, the court is directed to confirm the judgment and sentence. If, however, the court finds that the prosecutor did purposefully discriminate against blacks in executing the peremptory challenges, the court is directed to order a new trial.

Affirmed in part and remanded with directions.

SCARIANO, P.J., and BILANDIC, J., concur.