(No. 44140.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DeWRIGHT BAXTER, Appellant.

*Opinion filed January 28, 1972.*

GERALD W. GETTY, Public Defender, of Cook County, (JAMES N. GRAMENOS, Assistant Public Defender, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and STEPHEN R. KRAMER, Assistant State's Attorneys, of counsel,) for the People.

MR. JUSTICE DAVIS delivered the opinion of the court:

The circuit court of Cook County, Criminal Division, found the defendant, DeWright Baxter, guilty of a direct criminal contempt of court and ordered that he be incarcerated in the House of Correction for 1 year. The appellate court affirmed the order and we granted leave to appeal.

The alleged contempt arose out of the allegations of a *pro se* petition for substitution of judges and attorney which was filed on April 16, 1968, by Baxter in a criminal action in which he was the defendant. Hearing was held on the petition on April 22, 1968, and immediately upon its conclusion, the contempt order, which is the subject of this appeal, was entered. The order neither contained findings relative to the specific facts out of which the contempt arose nor set forth the petition or certain of its allegations. However, the transcript of record set forth the petition and the contempt order, and the report of proceedings contained all colloquies, questions and answers between the defendant, his counsel and Judge Reginald Holzer.

In his petition the defendant alleged that Judge Holzer and the defendant's counsel had entered into a conspiracy to sentence him to the penitentiary for from 9 to 12 years if he failed to plead guilty to the charges in two cases then pending against him; that the defendant could not receive

a fair trial before Judge Holzer because of the alleged conspiracy; and that his attorney had negotiated a sentence of 2 to 3 years if he did plead guilty. The defendant then referred to a letter from his attorney as "evidence" of such a conspiracy, denied that he had requested a "deal" from his attorney or Judge Holzer, stated that both his attorney and the Judge were now angry because of his refusal to plead guilty, and that the defendant was told on April 4, 1968, that he would not be granted a change of venue. The defendant also stated that Judge Holzer had entered "into a conspiracy with my attorney to save face in a fraud," and charged that the court acted as a "Klux Klan, Gestapo Setup, Jim Crow Justice and a Crime Syndicate" in his two cases.

Upon hearing the petition, Judge Holzer engaged in the following colloquy with the defendant:

"THE COURT: Therefore, the Court will ask the petitioner if indeed this is his signature?

THE DEFENDANT: That's mine. That's mine.

THE COURT: Did you write this in your own handwriting, sir?

THE DEFENDANT: Yes, sir.

THE COURT: Do you affirm the contents of this document?

THE DEFENDANT: I can prove everything I am saying in there so far."

The court then recited the history of the defendant's two cases, which indicated that he was then being represented by his third court-appointed attorney, the second having withdrawn after the defendant made accusations against him as well. The court then read into the record several passages from the petition, found the defendant guilty of a direct contempt, and entered the contempt order on that date. The defendant has appealed from this order, and the judgment of the Appellate Court affirming it.

The defendant contends that he was deprived of due process and equal protection of the law in that he was not

granted a jury trial before another judge on the question of the alleged contempt, and in that a sentence of one year made the contempt sufficiently serious to require a trial rather than summary sentencing.

In *People v. Tomashevsky, 48 Ill.2d 559,* we considered the court's power to punish for both direct and indirect contempt, and the rules there cited relative to direct contempt proceedings are applicable in the case at bar and need not be restated. Under the facts of this case the defendant committed an act of direct contempt of the court. The allegations of his petition were intentionally disrespectful, contemptuous and abusive of the court, and reflected upon the personal integrity of Judge Holzer. *People v. Tavernier, 384 Ill. 388, 393.*

We believe that the appellate court properly held that the order finding the defendant guilty of direct contempt was valid even though it stated no facts to support it. While *People v. Tavernier, 384 Ill. 388,* is frequently cited in support of the rule that specific facts constituting the basis of a direct contempt may be incorporated by reference, if not set forth in the order itself, that rule of law does not appear applicable to the case at bar. However, *Tavernier* also stated at page 392 that "The facts which are essential to sustain the action of the court in issuing an order of commitment cannot be supplied by presumptions or inferences." In *People v. Tomashevsky, 48 Ill.2d 559,* at page 564 we noted and approved the pronouncement of our appellate courts "that since the report of the proceedings reflects what actually occurred in open court, the findings in the order of contempt, if in conflict with the report of proceedings, do not control; and that it is only where there is no report of proceedings that the reviewing court will not go behind the order but is bound to assume that the findings are correct."

Since there was no reference whatsoever in the contempt order to the defendant's petition, or its allegations, which gave rise to the contempt, it was necessary to look to the record to determine whether the contempt

order was correct. In *People v. Loughran, 2 Ill.2d 258,* a contempt case, we considered the record to determine the correctness of the contempt order, and we now recognize the propriety of such procedure. Also see: *People v. DeStefano, 64 Ill.App.2d 368.*

However, we believe it is better practice to use a written order in direct contempt proceedings which sets forth fully, clearly and specifically the facts out of which the contempt arose. As we stated in *Tomashevsky,* at page 565: "Prudence would dictate that the order should be in writing so that the contumacious acts may be set forth fully, clearly and specifically. Thus, the reviewing court could readily determine whether the committing court had jurisdiction to enter the order."

The defendant here cites *Mayberry v. Pennsylvania, 400 U.S. 455, 27 L.Ed.2d 532, 91 S.Ct. 499,* and *Bloom v. Illinois, 391 U.S. 194, 20 L.Ed.2d 522, 88 S.Ct. 1477,* as authority to support his contention that he should have been given a public trial before a judge other than the one he reviled. This issue has not been previously considered by this court.

In *Mayberry,* the defendant, who had an appointed counsel as an adviser but who represented himself, was found guilty of eleven distinct direct contempts of court during the trial for which, at its end, he was sentenced to serve not less than 11 nor more than 22 years in the penitentiary. In reversing the conviction, the United States Supreme Court stated (400 U.S. 455, 463-464): "Where, however, he (the judge) does not act the instant the contempt is committed, but waits until the end of the trial, on balance, it is generally wise where the marks of the unseemly conduct have left personal stings to ask a fellow judge to take his place."

Here, however, Judge Holzer acted immediately upon reading the contents of the defendant's petition. He did not become embroiled in a bitter running controversy with the defendant, as occurred in *Mayberry,* but rather, he read the petition, verified its preparation and execution by

the defendant, held him in contempt forthwith and entered the contempt order; thereby the personal resentment, with which the Supreme Court was concerned in *Mayberry,* did not arise. Moreover, it was a pretrial petition in the case at bar which spawned the contempt and not the offensive conduct during a long jury trial. Therefore, we hold that *Mayberry* does not control the case at bar.

In *Bloom,* the defendant, an attorney, was convicted of direct contempt of court for executing a will and submitting it for probate, after the putative testator was deceased. He was sentenced to two years imprisonment, after being denied a trial by jury. The United States Supreme Court reversed his conviction and held that serious contempts are so nearly like other serious crimes that they are subject to the jury trial provisions of the constitution, that a sentence of two years duration constituted the offense a "serious" contempt, and that a defendant charged with a "serious" contempt is entitled to a jury trial, if he demands it.

Although the defendant has urged that we determine whether a sentence of one year's duration is also a "serious" contempt, we find it unnecessary to decide this question. In *DeStefano v. Woods, 392 U.S. 631, 20 L.Ed.2d 1308, 88 S.Ct. 2093,* the Supreme Court of the United States specifically held that its decision in *Bloom v. Illinois* had no retroactive effect, and that the court would not reverse State contempt convictions for failure to grant jury trials, "where the trials began prior to May 20, 1968," the date of the *Bloom* decision. Since Baxter's contempt occurred and the order was entered on April 22, 1968, a month before the *Bloom* decision, the holding in that case has no application in the case at bar.

In view of our conclusions, the judgment of the appellate court is affirmed.

*Judgment affirmed.*