THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY MINOR, Contemner-Appellant.

First District (1st Division)   No. 1—94—0560

Opinion filed June 3, 1996.—Rehearing denied July 17, 1996.

WOLFSON, J., dissenting.

Michael J. Pelletier and Debra R. Salinger, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Susan R. Schierl, and Christine L. Kornak, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court.

Contemner, Anthony Minor, appeals from his summary conviction for direct criminal contempt of court based upon his filing of false documents with the court. He contends on appeal that the allegations in his *pro se* petition to withdraw his guilty plea were insufficient to support the contempt conviction. He contends further that the trial court erred in proceeding summarily.

## FACTS

Contemner was charged with one count of residential burglary, a Class 1 felony punishable by not less than 4 years nor more than 15 years of imprisonment. 720 ILCS 5/19—3; 730 ILCS 5/5—8—1(a)(4) (West 1992). Following a negotiated guilty plea on November 10, 1993, he was convicted of burglary, a Class 2 felony punishable by not less than three years nor more than seven years of imprisonment, and he was sentenced to the minimum prison term of three years. 720 ILCS 5/19—1; 730 ILCS 5/5—8—1(a)(5) (West 1992). He subsequently sent various *pro se* documents, including a petition to withdraw his guilty plea, to the trial judge, to another judge, to his attorney, and to circuit court clerks, in which he made allegations about the trial judge.

In his *pro se* "Petition to Withdraw Guilty Plea and Vacate Sentence," which was file-stamped December 7, 1993, contemner stated, *inter alia*:

"3. Petitioner['s] Guilty Plea was made after the Judge: Mattew [*sic*] J. Moran racially denied a consensus agreement that was made with the defendant, defendant's Attorney and the [S]tate's Attorney whom [*sic*] agreed upon 9 months home detention to avoid overcrowding the prison system all because the victim, Mary J. McDonald whom I love dearly falsely claimed that her residents [*sic*] was broken into ***.

4. Petitioner's Guilty Plea was also made by the racism shown by the Judge when the State's Attorney offered the Defendant 9 month [*sic*] home detention and the Judge refused to acknowledge the offer when accepted and the Judge changed it to 3 years.

5. Petitioner's Guilty Plea was made because there was [*sic*] statements made that the Judge was going to persuade the Jury to convict the defendant so a Nine year sentence could be imposed upon the defendant for a prejudice perspective that the Judge insteals [*sic*] within his courtroom."

In an undated, unstamped *pro se* document entitled "Amended Reasons For Withdraw [*sic*] of Guilty Plea," contemner stated that Judge Moran had made a "false accusation" against him in declining to sentence him to substance abuse treatment; that "[t]he threat of [*sic*] accept 3 years or take 9 years imprisonment for the case if the 3 was not accepted, and that the Judge would persuade the Jury as to why they should Find me guilty and that the Judge would be sure to expunge his statements from the Court records and transcripts"; that Judge Moran had violated his constitutional rights "which also grant [*sic*] reason to show prejudice in the Courtroom"; that "Defendant['s] race, color & creed did matter because several white individuals appeared before the Judge Mattew [*sic*] J. Moran with more than one prior conviction and similar charge and was [*sic*] allowed to get I-Bonds. Defendant was denied I-Bond ***."

The record also contains various other *pro se* documents. In a letter sent to his assistant public defender dated November 16, 1993, and file-stamped November 24, 1993, contemner stated that he was withdrawing his guilty plea because, *inter alia*:

"3. I Feared my life standing trail [*sic*] before the Honorable Court of Judge Mattew [*sic*] J. Moran do [*sic*] to the threat imposed upon my [*sic*] by the accusations made about the Judge is going to give me more that [*sic*] a reasonable amount of time for the crime.

\* \* \*

6. I have reason to believe that the Judge was paid off to give me the 3 years by staff in the Court house."

In a *pro se* document dated November 29, 1993, but not file-stamped, which contains the trial court case number and the name of the trial judge, contemner purported to indict the burglary complainant "in the State of Shock, County of Chaos & Confusion and Supreme Court of Love & Heartbreak" based upon, *inter alia*, her failure to send him "enough love letters," and he threatened her with "a life time of misery" (in all capital letters) in the event that she were found guilty of any of the charges. The words "just us" (in all capital letters) and "Justice" were typed under his signature.

In a letter sent to the "Clerk of the Curcuit [*sic*] Court and whom ever this might Concern" dated November 24, 1993, and file-stamped December 7, 1993, contemner stated that he had been forced to plead guilty, that he had placed himself on a hunger strike until he could return to court and plead his case, and that:

"I have reason to believe that Judge Mattew [*sic*] J. Moran is in a racist group such as the Ku Klux Klan."

In an undated letter sent to the court clerk in which he requested the return of his personal property (including a religious book and two pagers), contemner stated:

I'm also going to kill myself if they do not bring me back to Court on my withdrawal of my Guilty Plea because this case is false and Judge Mattew [*sic*] J. Moran forced up [*sic*] me a sentence that I did [not] want to take but I was told that if I did not accept the 3 years then I would get 9 years on trail [*sic*]."

Finally, in a letter sent to Judge Loretta C. Douglas dated November 28, 1993, and file-stamped December 3, 1993, contemner stated:

"My reason for writting [*sic*] is because I would like to know why come [*sic*] when I requested a substitution of Judge from Judge Mattew [*sic*] J. Moran to your court-room he became enraged and clearly stated to me that I will not be getting a substitution of Judge and that he better not here [*sic*] that Slut's Douglas name again in his Court unless somebody wanted to really get sometime [*sic*]."

Contemner stated further in the same letter:

"I refuse to stand trail [*sic*] before Judge Mattew [*sic*] J. Moran because I am afraid of him, and I fear my life before him because of his racist action's [*sic*] and his discrimination toward you show's [*sic*] that he has no respect for nobody [*sic*]."

In the same letter, contemner threatened to commit suicide if he were not allowed to return to court to withdraw his guilty plea.

On December 16, 1993, Judge Moran denied the petition to vacate the guilty plea and summarily found contemner to be in direct criminal contempt of court. Judge Moran observed that the factual circumstances that were brought to his attention during the plea conference were similar to a stalking situation, and he also orally stated:

"You've also filed a motion to vacate the plea with the Court in which you stated that the Judge was paid off to give you a three year sentence by the staff of the Court house. That is totally false. The sentence that was imposed is the minimum sentence for burglary.

You also accused the Court of being a racist which is also totally false.

Your motion to vacate the plea is denied. You are found in direct contempt of the Court for filing false documents with the Court ***."

Judge Moran's written order stated in part that contemner had "filed a written pro se motion to vacate the plea in which he alleged

this Court was racist and was paid off to impose a three year sentence," and that contemner's conduct was "an attempt to lessen the dignity of the Court and tends to bring the administration of justice into disrepute." The order stated that the transcript of proceedings was "attached and made an integral part of this order."

Contemner was sentenced to six months in jail, to be served consecutively with the three-year prison term for burglary.

On appeal, contemner contends that the trial court erred in summarily convicting him of contempt of court. Focusing solely upon his petition to withdraw the guilty plea and his amended reasons for withdrawal of the guilty plea, contemner asserts that there was no basis for the finding of contempt because those particular documents neither accused the judge of having been paid off, nor used the precise word "racist," nor accused him of associating with "any well-known hate groups." He also asserts that his statements were "factual" and "respectful," rather than contemptuous, and that "[t]he contents of the motion to vacate [his] plea failed to establish that the statements were made in anything but good faith." Before determining whether the conduct in this case was contemptuous, we must determine the category of contempt involved.

## ANALYSIS

■ Courts are empowered to punish for contempt. 720 ILCS 5/1—3 (West 1992). The categories of contempt are indirect civil, direct civil, indirect criminal, and direct criminal. *People v. Kaeding*, 239 Ill. App. 3d 851, 853 (1993). The applicable procedures vary depending upon the category of contempt. *Kaeding*, 239 Ill. App. 3d at 853. If the purpose of a contempt sanction is prospective, to compel the contemner to perform an action, the nature of the contempt is civil. *Kaeding*, 239 Ill. App. 3d at 853. If the purpose of a contempt sanction is retrospective, to punish past conduct, the nature of the contempt is criminal. *Kaeding*, 239 Ill. App. 3d at 853.

Here, the purpose of the sanction was retrospective, to punish contemner for filing documents containing false statements about the court. Therefore, the nature of the alleged contempt was criminal rather than civil.

The next issue is whether the alleged contempt was direct or indirect. Direct criminal contempt may be summarily found and punished, but indirect criminal contempt requires the due process rights of notice, an opportunity to answer, and a hearing. *Kaeding*, 239 Ill. App. 3d at 854. The Illinois Supreme Court has stated:

> "Direct criminal contempt may occur in either of two ways. The contemptuous acts may all take place in the presence of the judge so that all of the elements of the offense are within his personal

knowledge. Alternately, the direct contempt may be committed out of the immediate physical presence of the judge but within an integral part of the court. [Citation.] The filing of a document with the clerk of the court under the appropriate circumstances falls within the latter type of direct contempt ***." *People ex rel. Kunce v. Hogan*, 67 Ill. 2d 55, 60 (1977).

In *People v. Robinson*, 100 Ill. App. 3d 660, 663 (1981), we upheld a conviction for direct criminal contempt of court based upon allegations contained in a petition for change of venue filed in open court. See also *People v. Baxter*, 50 Ill. 2d 286, 290 (1972) (the filing of a *pro se* petition for substitution of judge and attorney was the basis for a direct criminal contempt conviction).

■ Here, although contemner's documents do not appear to have been filed in open court, most of the documents were sent to or filed within integral parts of the court, namely, the clerk of the circuit court and a circuit court judge (Judge Douglas). Furthermore, the elements of the allegations relevant here were within Judge Moran's personal knowledge. Given the circumstances, the alleged contempt committed in this case can be categorized as direct, and it accordingly would be subject to summary sanction by the court.

Our conclusion that the trial court was justified in acting summarily is not inconsistent with *People v. Ramsell*, 266 Ill. App. 3d 297, 298-99 (1994), which was cited by contemner. In *Ramsell*, the contemner was entitled to the procedural safeguards applicable to an indirect criminal contempt proceeding (notice, a fair hearing, and an opportunity to be heard), because the alleged criminal contempt, failure to appear in court for a hearing, was indirect and may have been inadvertent.

■ The next issue is whether the statements here were contemptuous. We note initially that in reviewing a contempt order, it is proper to consider the record (*Baxter*, 50 Ill. 2d at 290), and that to determine the grounds for a contempt conviction, it is proper to consider the written contempt order together with the transcript of the proceedings (see *People v. Bell*, 276 Ill. App. 3d 939, 944 (1995)). Contemner here improperly presupposes that his conviction was based solely upon the allegations contained in his *pro se* petition to withdraw his guilty plea and in his *pro se* amended reasons for withdrawal of the guilty plea. Although Judge Moran made a particular reference to the petition, he also orally stated that the contempt was based upon contemner's filing of false "documents." Read together, the written contempt order and the report of proceedings demonstrate that the contempt conviction was based upon various *pro se* documents contained in the record on appeal, not solely the ones ad-

dressed in contemner's briefs. Some of the documents explicitly referred to contemner's efforts to withdraw his guilty plea, such as the letter sent to Judge Douglas and the November 24, 1993, letter sent to the clerk of the "curcuit [*sic*]" court. Therefore, in summarily sanctioning contemner, it would have been reasonable for Judge Moran to consider allegations contained in these documents as well as allegations contained in the *pro se* petition to withdraw the guilty plea and *pro se* amended reasons for withdrawal of the guilty plea. We now turn our attention to whether there is sufficient evidence to support the summary finding of contempt and whether Judge Moran considered facts outside his personal knowledge.

The Illinois Supreme Court recently reaffirmed that criminal contempt of court consists of conduct " 'calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute.' [Citations.] A finding of criminal contempt is punitive in nature and is intended to vindicate the dignity and authority of the court." *People v. Simac*, 161 Ill. 2d 297, 305-06 (1994) (defense attorney's conviction for direct criminal contempt was upheld for having deceived the court as to the defendant's identity). Although the contemner's conduct must have been willful, his contemptuous intent may be inferred from the surrounding circumstances and the character of the conduct. *Simac*, 161 Ill. 2d at 307. The standard of review is "whether there is sufficient evidence to support the finding of contempt and whether the judge considered facts outside of the judge's personal knowledge." *Simac*, 161 Ill. 2d at 306. The key question before a court of review is the correctness of the trial court's conclusion, not the validity of its reasoning (*People v. Tobe*, 49 Ill. 2d 538, 547 (1971); *People v. Rodriguez*, 187 Ill. App. 3d 484, 489 (1989)), and a judgment may be affirmed on any basis discernible from the record (*Rodriguez*, 187 Ill. App. 3d at 489; *People v. Ortiz*, 170 Ill. App. 3d 1083, 1089 (1988); *People v. Bolden*, 152 Ill. App. 3d 631, 637 (1987)).

Turning to the present case, we are satisfied that there is sufficient evidence in the record to support contemner's conviction for direct criminal contempt of court. We further find that Judge Moran relied solely upon facts within his own personal knowledge in summarily finding contempt in this case. Contemner filed with the court, or caused to be filed with the court, *pro se* documents that ascribed to Judge Moran racism, a matter which would have been within the judge's own personal knowledge. Contrary to contemner's semantic and disingenuous assertion that his remarks were not contemptuous because they did not contain the word "racist" or accuse Judge Mo-

ran of associating with a hate group, the unmistakable gist of the remarks was that the judge was a racist, and in one of the *pro se* documents contemner made an allegation about the judge and the Ku Klux Klan. Contemner's allegations of racism provided an ample basis for a finding of direct criminal contempt without regard to the allegation of a payoff in contemner's letter sent to the assistant public defender. The allegations of racism constituted sufficient evidence of contempt because they were disrespectful, they maligned the personal character and integrity of the judge, and they were clearly calculated to derogate from the court's dignity, to embarrass the court, and to bring the administration of law into disrepute. Therefore, the trial court's summary finding of direct criminal contempt of court was proper based upon the allegations of racism and without regard to the validity of its rationale regarding allegations of a payoff.

The cases cited by contemner do not warrant a contrary conclusion. For example, in *People v. Penson*, 197 Ill. App. 3d 941, 944-45 (1990), the contemner's misrepresentation was not willful because he had relied upon information from his secretary when he informed the court that money had been wired to a bank. In *People v. Griffith*, 247 Ill. App. 3d 21, 23-24 (1993), there was no written contempt order, and the allegations in question, which suggested that the trial judge had adopted the role of a prosecutor, were made by attorneys representing a client, they constituted hyperbole, and they were within the "legal lexicon."

The judgment of the circuit court is affirmed. Pursuant to *People v. Nicholls*, 71 Ill. 2d 166 (1978), and section 4—2002.1(a) of the Counties Code (55 ILCS 5/4—2002.1(a) (West 1994)), we grant the State's request and assess defendant $100 as costs for this appeal.

Affirmed.

BUCKLEY, J., concurs.

JUSTICE WOLFSON, dissenting:

I do not see how the administration of justice is brought into disrepute when a slightly deranged, barely literate African-American defendant, who has just received a three-year sentence, writes several documents which contain the "unmistakable gist" of an accusation that the white judge is a racist.

Certainly, calling anyone a racist is not a kind thing to do. A racist is someone who believes his own race is superior. But why would we expect a convicted defendant to say kind things about the sentenc-

ing judge? I have seen worse things said about judges of this court in petitions for rehearing.

It is not as if the defendant shouted the accusation from the well of the courtroom or the courthouse rooftop. It was on pieces of paper, which the trial judge was free to ignore. Judges are supposed to be a hardy breed. I think this is a case of judicial thin skin. I would reverse.