# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Hixson*, 2012 IL App (4th) 100777

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FALANZO M. HIXSON, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-10-0777 |
| Filed | January 23, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An order finding defendant inmate in direct criminal contempt of court for mailing a proposed order in his postconviction proceedings to the circuit court purporting to have been signed by the presiding judge was reversed on the ground that there was insufficient evidence that defendant's conduct was willful, since the order was mailed along with his petition requesting the entry of such an order and the circumstances, at most, indicated that defendant merely submitted a faulty proposed order for filing. |
| Decision Under Review | Appeal from Circuit Court of Champaign County, No. 99-CF-1850; the Hon. Jeffrey B. Ford, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Michael J. Pelletier, of State Appellate Defender's Office, of Springfield, and Johannah B. Weber and John H. Gleason, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE KNECHT delivered the judgment of the court, with opinion.

Justices Appleton and Pope concurred in the judgment and opinion.


## OPINION

¶ 1    In August 2010, the trial court denied defendant's *pro se* postconviction petition and found defendant in direct criminal contempt of court for mailing to the circuit court an order which "on its face purports to have been signed by this Court as Presiding Justice." Additionally, the court sentenced defendant–for the direct criminal contempt–to six months in the Champaign County correctional center to run consecutive to his 55-year sentence for first degree murder.

¶ 2    Defendant appeals the criminal contempt order, arguing the trial court erred by finding him in direct criminal contempt because the evidence failed to establish he submitted the proposed order with a contemptuous state of mind.


¶ 3                    I. BACKGROUND

¶ 4    In April 2000, a jury found defendant guilty of first degree murder. In July 2000, the trial court sentenced him to 55 years' imprisonment. Defendant appealed his conviction and sentence, and this court affirmed. *People v. Hixson*, No. 4-00-0718 (Dec. 5, 2002) (unpublished order under Supreme Court Rule 23).

¶ 5    In April 2004, defendant filed a *pro se* postconviction petition, arguing he received ineffective assistance of counsel for failure to (1) call alibi witnesses; (2) impeach Andre Gordon, one of the State's witnesses; and (3) file a postsentencing motion. Defendant also alleged he received ineffective assistance from appellate counsel for failing to include in his direct appeal those instances of trial court's ineffectiveness apparent from the record. In June 2004, the trial court dismissed defendant's *pro se* petition as frivolous and patently without merit. Defendant appealed the dismissal of his *pro se* petition, and this court affirmed. *People v. Hixson*, No. 4-04-0642 (May 3, 2006) (unpublished order under Supreme Court Rule 23).

¶ 6        In July 2010, defendant filed a *pro se* "Petition for Injunctive Relief," arguing he was statutorily entitled to receive day-for-day good-conduct credit against his sentence and requesting the trial court enjoin the State from applying the reenacted truth-in-sentencing legislation to his 55-year sentence. Attached to defendant's *pro se* petition was an order enjoining application of the truth-in-sentencing statute and applying "the 50% sentencing to [d]efendant's 55 year sentence." The name "Jeffrey B. Ford" was typed on the signature line of the order, which appeared above the words "Presiding Justice."

¶ 7        In August 2010, the trial court entered an order denying defendant's *pro se* petition. Additionally, the court entered a second order finding defendant in direct criminal contempt of court for mailing to the circuit clerk an order which "on its face purports to have been signed by this Court as Presiding Justice." The court stated the following regarding defendant's attached order:

> "This Order, attached, has not been entered by this Court, but to an observer, could be seen as a copy of one that was entered. The said Order purports to shorten Defendant's sentence by 50% and release him from the Illinois Department of Corrections at a time when he should be serving his sentence. This Order was prepared and sent to the Circuit Clerk of Champaign with the other documentation stated above to be filed in Defendant's court file.

> Defendant's actions, if not caught by this Court, would hinder the administration of justice and put the Court in disrepute."

The court sentenced defendant to six months in the Champaign County correctional center to be served consecutively to his 55-year sentence and ordered him transferred to the correctional center upon completion of his 55-year sentence.

¶ 8        This appeal followed.

¶ 9                                    II. ANALYSIS

¶ 10       Defendant argues the trial court erred by finding him in direct criminal contempt because the evidence failed to support a finding he submitted his proposed order with a contemptuous state of mind. Specifically, defendant argues "the proposed order [more than likely] reflected nothing more than [his] ignorance of exactly how to prepare a proposed order." The State counters defendant embarrassed the court and brought the administration of law into disrepute when he typed the judge's name on the signature line of the order, which gave "the impression that the judge had authorized and entered the order." According to the State, defendant would know his actions were "fraudulent and deceptive" even without any formal legal education.

¶ 11       The standard of review for direct criminal contempt is whether sufficient evidence exists to support a finding of contempt and whether the judge considered facts outside the judge's personal knowledge. *People v. Simac*, 161 Ill. 2d 297, 306, 641 N.E.2d 416, 420 (1994). "Criminal contempt of court has been generally defined as conduct which is calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute." *People v. Javaras*, 51 Ill. 2d 296, 299, 281 N.E.2d 670, 671 (1972).

¶ 12     Two forms of criminal contempt have been recognized: direct and indirect. *People v. L.A.S.*, 111 Ill. 2d 539, 543, 490 N.E.2d 1271, 1273 (1986). Direct criminal contempt may occur in either of two ways: (1) the contemptuous acts are personally observed by the judge or (2) the contemptuous acts are committed outside the immediate physical presence of the judge but within an integral part of the court, *i.e.*, the circuit clerk's office. *People v. Minor*, 281 Ill. App. 3d 568, 572-73, 667 N.E.2d 538, 541 (1996). Under appropriate circumstances, the filing of a document with the clerk of the court may be a basis for a direct-criminal-contempt conviction. See *Minor*, 281 Ill. App. 3d at 572-73, 667 N.E.2d at 541 (contemnor was found in direct criminal contempt for sending *pro se* documents to the clerk of the circuit court and a circuit court judge, which contained false allegations about the judge).

¶ 13     "Direct criminal contempt may be found and punished summarily because all elements are before the court and, therefore, come within its own immediate knowledge." *L.A.S.*, 111 Ill. 2d at 543, 490 N.E.2d at 1273. Therefore, the usual procedural-due-process safeguards are not required for a direct-criminal-contempt conviction. *Id.*

¶ 14     However, the alleged contemnor in an indirect criminal contempt proceeding is entitled to "due process safeguards, including notice, opportunity to answer, and a hearing." *L.A.S.*, 111 Ill. 2d at 543-44, 490 N.E.2d at 1273. Direct criminal contempt which allegedly occurred in the constructive presence of the court is subject to the same procedural requirements as indirect-criminal-contempt proceedings. *In re Marriage of Betts*, 200 Ill. App. 3d 26, 59-60, 558 N.E.2d 404, 426 (1990).

¶ 15     Before citing one with contempt, a court must find the alleged contemnor's conduct was willful. *Simac*, 161 Ill. 2d at 307, 641 N.E.2d at 421. "The alleged contemnor's state of mind, however, does not have to be affirmatively proven; the contemptuous state of mind may be inferred from the allegedly contemptuous conduct itself." *Id.* The intent may be inferred from the circumstances surrounding the contemptuous conduct and the character of the party's conduct. *Id.*

¶ 16     The State cites *Simac*, 161 Ill. 2d at 314, 641 N.E.2d at 424, and *People v. Smeathers*, 297 Ill. App. 3d 711, 717, 698 N.E.2d 181, 185 (1998), in support of its argument defendant's actions were contemptuous. In *Simac*, 161 Ill. 2d at 308-10, 641 N.E.2d at 421-22, the supreme court determined the contemnor's actions of placing a clerical employee, who resembled the defendant, in the defendant's customary place at counsel's table during trial without the court's permission or knowledge was calculated to cause a misidentification. Further, in *Smeathers*, 297 Ill. App. 3d at 717-18, 698 N.E.2d at 185, the Second District Appellate Court determined sufficient evidence existed to prove the respondent guilty of contempt because he sent a series of notices of lien and default, without any legal or factual justification, to Judge Kelly, who presided over his traffic cases, in an attempt to have his driver's license returned.

¶ 17     Under the facts of the present case, we find insufficient evidence exists to support the trial court's finding of direct criminal contempt. An essential element to a finding of criminal contempt is the contemnor's conduct must be willful. Here, defendant mailed a *pro se* petition for injunctive relief to the Champaign County circuit clerk's office and the Champaign County State's Attorney office. Attached to the *pro se* petition was a proposed

-4-

order granting the relief requested by defendant in his *pro se* petition.

¶ 18 Although defendant apparently typed the name "Jeffrey B. Ford" on the signature line of the order, rather than beneath it, this cannot be construed as an attempt to embarrass, hinder, or obstruct the judge in the administration of justice. Defendant mailed the proposed order to the circuit clerk's office along with his petition requesting such an order be entered. At most, the facts and circumstances indicate defendant submitted "a faulty proposed order" for filing. Because we find insufficient evidence exists to support the trial court's finding of direct criminal contempt, we reverse the trial court's contempt order.

¶ 19 Further, we note defendant was entitled to the following procedural safeguards: (1) notice of the nature of the contempt charges; (2) an opportunity to answer the alleged charges; (3) right to a hearing; (4) the privilege against self-incrimination; (5) the presumption of innocence; (6) the right to be proved guilty beyond a reasonable doubt; (7) right to counsel (and to appointed counsel if indigent); (8) right to confront and cross-examine witnesses; (9) right to be personally present at trial; (10) right to testify or to remain silent; (11) right to compulsory process for obtaining witnesses; and (12) right to present the testimony of witnesses favorable to his or her defense. See *Betts*, 200 Ill. App. 3d at 58-59, 558 N.E.2d at 425-26 (setting forth the procedural requirements for indirect-criminal-contempt proceedings and constructive-direct-criminal-contempt proceedings).

¶ 20          III. CONCLUSION

¶ 21 For the reasons stated, we reverse the trial court's contempt order.

¶ 22 Reversed.