**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 180418-U

Order filed February 17, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| SEAN P. HUFFMAN, | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| Petitioner-Appellant, | ) | Rock Island County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-18-0418 |
| | ) | Circuit No. 12-F-275 |
| | ) | |
| ALEXES TIBERIO, | ) | Honorable |
| | ) | Walter D. Braud, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE O'BRIEN delivered the judgment of the court.
Presiding Justice McDade and Justice Wright concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The evidence was insufficient to support a conviction for direct criminal contempt.

¶ 2     Petitioner, Sean P. Huffman, filed a complaint to establish paternity of a minor child. During the proceedings, Huffman, made several posts to his Facebook account that disparaged the circuit court, the child's guardian *ad litem*, and counsel for respondent, Alexes Tiberio. The posts violated a prior court order. As a result of the posts, the court initiated criminal contempt proceedings and found Huffman in direct criminal contempt. On appeal, Huffman argues the

court's direct criminal contempt finding violated Huffman's right to due process because the evidence was insufficient to prove his guilt beyond a reasonable doubt. We reverse Huffman's direct criminal contempt conviction.

¶ 3                                    I. BACKGROUND

¶ 4        On May 2, 2012, Huffman filed a petition to establish paternity, custody, visitation, and support against respondent. During a July 26, 2017, hearing, the court verbally ordered Huffman "not to use the internet or any other media to criticize public officials, court personnel, or the respondent." Huffman indicated that he understood the order.

¶ 5        On June 20, 2018, counsel for respondent filed a motion for rule to show cause. The motion alleged that Huffman violated the July 26, 2017, court order when he authored several derogatory Facebook posts that criticized the court, the child's guardian *ad litem*, and counsel for respondent. Counsel asked the court to find Huffman in contempt of court and impose financial sanctions.

¶ 6        On June 28, 2018, the court conducted a hearing on the motion for rule to show cause. Counsel for respondent entered printed copies of Huffman's Facebook posts into evidence. In the posts, Huffman suggested the court, the guardian *ad litem*, and counsel for respondent were "child predators" and "pedophiles" who "kidnapped" Huffman's child and committed fraud, extortion, and various other crimes. The posts also referred to the court as "unevolved monkeys" and accused it of acting dishonestly and flagrantly violating Huffman's rights and his child's rights.

¶ 7        Counsel for respondent called Huffman to testify. Huffman acknowledged the prior court order and admitted to authoring the posts. However, Huffman believed that the court's prior order violated "due process." In response to a question from the court, Huffman said he had a constitutional right to make the posts.

¶ 8        The court waived closing arguments and found Huffman in contempt of court. The court specifically found that Huffman had "used social media" to make "defamatory remarks in violation of the court's order; to wit, calling parties pedophiles, frauds, et cetera." To purge the contempt, the court ordered Huffman to pay $300 in attorneys fees within 90 days.

¶ 9        The court ended the proceedings on the rule to show cause and began a criminal contempt proceeding. The court directed counsel for respondent, who was writing up the prior order, to "leave a space, because I have to decide whether there's any further punishment on the contempt based on what happens in this *** direct criminal contempt proceedings."

¶ 10        During the criminal contempt proceeding, the court explained

"[E]ven though these posts were made outside of court, they are actually now a part of the court proceeding. ***

*** And so if you had, say, written these letters to her, or yelled it out the window, probably it would be outside of the court, and even putting it on social media, it still is pretty much out—I didn't know about it. It's kind of outside the court, but because you're in court and they've been introduced into the record, now they're in court and they're in my face. When they're in my face, it's called 'direct criminal contempt.' The other kind, if you—if you did all this and it never got into this courtroom, that would be 'indirect,' and we have a whole lot of steps. But this is in my face, so there are no steps. I'm going to decide within the next half an hour whether you directly insulted me, the court, and the court system, whether you did it with malice *** and if I *** make those findings, then I'm going to do something about it ***."

¶ 11        The court recalled Huffman to testify. Without admonishing Huffman, the court asked,

"[E]xplain to me, if you can, how—maybe why you did it, or if you didn't do it, tell me which ones you didn't do, or maybe explain how you could come about in your mind that you would think that this would be all right, or if you think that I'm not reading it right, explain it."

Huffman responded, "[Y]ou know, when you're sitting in your house at night and you're pissed off and you want to vent." Huffman also said that he believed that he had a constitutional right to make the post. Huffman also thought that the post was shared only with his friends. In an unsworn statement, counsel for respondent indicated that he was able to access the post without having a social media connection to Huffman. Huffman apologized for the post and asked the court to impose a sentence of community service.

¶ 12    At the conclusion of Huffman's testimony, the court found Huffman "in direct criminal contempt." The court also found "the Facebook posts were intended to embarrass and obstruct the administration of justice and it directly smeared the reputations of the court and its officers. I find that the conduct was willful and intentional. I find that the conduct is properly before the Court because it's in the exhibits." The court then sentenced Huffman to one year of probation and "one year in jail as a condition of the probation." The court suspended 11 months of the jail term. The court also imposed a $1000 fine. Huffman appeals.

¶ 13                                    II. ANALYSIS

¶ 14    Huffman argues the court's direct criminal contempt proceedings violated his right to due process, including: the right to be proven guilty beyond a reasonable doubt, the right to counsel, the right to written notice of the criminal contempt charges, the privilege against self-incrimination, and the right to a jury trial. Respondent did not file a brief. However, because "the record is simple and the claimed errors are such that [we] can easily decide them without the aid

of an appellee's brief," we will decide the merits of the appeal without the need for an appellee's brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 15    We note that Huffman failed to identify a standard of review for a direct criminal contempt finding. On appeal, we consider "whether sufficient evidence exists to support a finding of contempt and whether the judge considered facts outside the judge's personal knowledge." *People v. Hixson*, 2012 IL App (4th) 100777, ¶ 11. If the evidence is insufficient to support the court's contempt finding, then a defendant's conviction must be reversed. *Id. ¶* 18.

¶ 16    In this case, the circuit court found that Huffman had committed direct criminal contempt. Criminal contempt is "conduct that is calculated to impede, embarrass, or obstruct the court in its administration of justice or derogate from the court's authority or dignity, or to bring the administration of the law into disrepute." *People v. Ernest*, 141 Ill. 2d 412, 421 (1990). Criminal contempt sanctions are imposed to punish past misconduct, not compel the contemnor to perform a particular act. *In re Marriage of Betts*, 200 Ill. App. 3d 26, 43 (1990). Direct criminal contempt is conduct that is (1) "personally observed by the judge," or (2) "committed outside the immediate physical presence of the judge but within an integral part of the court." *Hixson*, 2012 IL App (4th) 100777, ¶ 12. Unlike indirect criminal contempt, where the court does not observe the contemptuous act, "Neither a formal charge nor an evidentiary hearing must precede a hearing on direct criminal contempt because the misconduct was actually observed by the court and the relevant facts lie within the court's personal knowledge." *People v. Perez*, 2014 IL App (3d) 120978, ¶ 18.

¶ 17    In the present case, the evidence was insufficient to support the circuit court's finding of direct criminal contempt. First, the record is clear that the court did not personally observe Huffman's conduct. *Cf. People v. Jashunsky*, 51 Ill. 2d 220, 225 (1972) (affirming, in part, the

circuit court's direct criminal contempt finding where the court personally observed the contemptuous conduct). Huffman provided testimony that suggested he was in his home when he authored the Facebook posts. There was no evidence that Huffman committed the conduct in court or the courthouse. Thus, the court did not have personal knowledge of Huffman's conduct. Second, the conduct did not "take place in an integral or constituent part of the court" and was not in the court's constructive presence. *People v. Javaras*, 51 Ill. 2d 296, 299 (1972); *cf. Perez*, 2014 IL App (3d) 120978, ¶ 22 (holding that where court personnel notified the court of respondent's conduct in the hallway outside of the courtroom, the conduct constituted indirect criminal contempt); *People v. Minor*, 281 Ill. App. 3d 568 (1996) (finding the evidence sufficient to support a direct criminal contempt finding where the contemnor sent the offending letters to the circuit clerk's office). Instead, Huffman's Facebook posts occurred completely outside of the court's presence, and the court only learned of the posts when counsel for respondent introduced printed copies of the posts into evidence. While the record establishes that the court was reasonably frustrated with Huffman, it does not support a finding of direct criminal contempt because the court did not have personal knowledge of Huffman's derogatory Facebook posts.

¶ 18 We need not address Huffman's other due process claims because the insufficiency of the evidence requires reversal of the direct criminal contempt order. See *Hixson*, 2012 IL App (4th) 100777, ¶ 18. Finally, we note that our decision does not impact the civil contempt proceeding that took place prior to the criminal contempt proceeding.

¶ 19                                                III. CONCLUSION

¶ 20 The judgment of the circuit court of Rock Island County is reversed.

¶ 21 Reversed.